## Petition of FLORIDA POWER CORPORATION.
Docket No. 770316-EU.     Order No. 8834.
Florida Public Service Commission.
April 18, 1979.

Richard W. Neiser, St. Petersburg, for the petitioner.

The following commissioners participated in the disposition of this matter — Chairman ROBERT T. MANN, and Commissioners WILLIAM T. MAYO, GERALD L. GUNTER, JOSEPH P. CRESSE and JOHN R. MARKS, III.

BY THE COMMISSION.

This docket was initiated by a petition submitted by Florida Power Corporation on April 7, 1977. The petition, which was accompanied by rate schedules designed to generate additional revenues of $62,325,262 annually, stated that this amount was necessary to compensate the company for the fixed costs associated with the company's Crystal River No. 3 nuclear generating facility, which was placed into commercial service on March 13, 1977. The petition further averred that the proposed increase in base rates designed to recognize the fixed costs of owning the plant would be offset by reduced expenditures for fuel incurred in the generation of electricity, due to the substantial differential between the cost per kilowatt hour of nuclear fuel and the higher costing fossil fuel which it would displace. (The concept of the higher base rates being justified by offsetting fuel cost benefits has been described in this docket as the company's "net savings theory.") The scope of the case as filed was thus limited to a consideration of the costs and associated benefits of the nuclear unit.

Within the 30 day period provided by Section 366.06(4), FS, we suspended in Order No. 7791, the operation of the rate sched-

ules submitted by the company, but authorized an interim increase in the amount of $60,767,961 to become effective, subject to refund, pending the results of a public hearing.

During the initial months of operation, the unit's performance did not produce the savings projected by the company. On September 1, 1977, we determined that the interim increase should be terminated pending the results of the hearing. That decision was incorporated in Order No. 7957, dated September 9, 1977. The company immediately appealed the decision, which was stayed by the Supreme Court of Florida. Ultimately, the court held that this action was improper, and Order No. 7957 did not become operative. *Florida Power Corporation v. Hawkins*, 367 So. 2d 1011 (Fla. 1979).

Eight days of public hearings on the company's petitions were held in November of 1977. A voluminous record was compiled, which included the testimony of expert witnesses in addition to the company's presentation. On February 2, 1978, we entered Order No. 8160, in which we concluded that the company had demonstrated that it was entitled to an increase in the amount of $59,468,468 annually. In that order, we commented upon the unique nature of the company's filing, and expressed our preference for a comprehensive review of a company's entire system when fixing rates.

Throughout this case, the manner in which the increase sought by the company should be spread among the classes of customers has been at issue. The original rates filed by the company were based upon a 1974 cost of service study. However, in authorizing the initial interim increase, we directed the company to increase each rate schedule by the same amount per kilowatt hour, recognizing that any reduction in fuel expense resulting from operation of the nuclear unit would impact equally upon all customers. Certain industrial customers contended, both in response to the initial interim order and during the hearings held in this docket, that the method chosen by the commission unreasonably increased the base rates of industrial classes by a percentage greater that that for residential consumers, without due regard for the cost to serve each class. After evaluating the record, we determined in Order 8160 that the method of revenue allocation to each class of customer which we had chosen for purposes of fashioning the initial interim increase was reasonable and valid, and should be applied to the $59 million increase as well.

Several parties filed petitions for reconsideration to Order No. 8160. Prior to the time that order became final, a serious failure within the unit caused Crystal River No. 3 to be lost from service for a then unknown period of time. Taking official notice of this

circumstance, we determined that the "net savings" theory no longer had any efficacy, and would not be accepted as justification for the base rate increase. Accordingly, in Order No. 8260, dated April 13, 1978, we stated that the company could continue to collect the $59 million increase, but that it would be subject to refund pending the results of a determination, within the existing docket, of the company's full revenue requirements (as determined by an analysis of the company's rate base expenses, and appropriate rate of return). Again the company sought review by the Supreme Court of Florida. The court stayed that portion of Order No. 8260 which compelled the company to file the data requirements preparatory to a full revenue requirements proceeding.

On December 11, 1978, the court issued an opinion which upheld our action in expanding the docket. As a result, we issued Order No. 8694 on January 26, 1979, which established calendar year 1978 as the test year for the expanded proceeding and fixed deadlines for the filing of certain rate case data.

Subsequent to the issuance of Order No. 8694, the commission staff brought to our attention the results of the most recent financial reports of the company, which indicate that the earned rate of return—based upon calculations which include the interim increase—is substantially lower than that presently authorized by the commission. In addition, Mobil Chemical Company intervened in the case for the purpose of filing a motion to terminate proceedings. This motion was joined in by Honeywell, Inc., an intervener herein. The thrust of the motion is that the commission should not compel the company to proceed with a full revenue requirements case under circumstances which indicate that the end result may well be an actual increase in rates charged by the company. Oral argument was held on the motion on March 26, 1979, and while we denied the motion at that time, we directed the commission staff to make a further recommendation after assessing all information available.

Order No. 8260 stated our objective of testing the reasonableness of the increase originally authorized by Order No. 8160 by reference to the performance of the company's entire system, as opposed by a consideration of a single unit.

This commission maintains a continuous surveillance of the earnings performance of utility companies subject to its jurisdiction. The program includes a requirement that such companies file financial data relating to their operations in a form prescribed by the commission on a monthly basis.

The monthly financial reports submitted by the company in compliance with the commission's continuing surveillance review pro-

gram for the months of December, 1978, January and February, 1979, of which we take official notice, reflect that Florida Power Corporation during those months achieved earned rates of return of 8.18%, 8.02% and 7.98% respectively, as compared to its presently authorized rate of return of 8.66%. While it reasonably could be assumed that the extensive evaluation of the company's performance which takes place in a rate case setting could result in some adjustments to the bases for such calculations, including a determination of the appropriate cost of capital to the company, the disparity between the earnings performance depicted by the monthly financial reports and the presently authorized return indicates strongly that the rates presently in effect do not produce a return that is unreasonably high at the present time. While we of course do not prejudge the results of a full case, we do recognize the possibility that the company under present circumstances could justify, not only the interim increase, but the requirement of additional revenues as well. Under such circumstances, we believe that the tremendous expense — in terms of time and money — associated with a major rate case, which of course is ultimately borne by ratepayers, would be unproductive and unwarranted. Accordingly, we have decided to terminate this docket.

In doing so, we wish to reiterate that we do not look with favor upon limited petitions such as the one which initiated this proceeding. Further, by taking official notice of the recent monthly statements of the company, we make no findings as to the propriety of any item of expense or rate base included within such reports. Our action in this case is of course without prejudice to the power and ability of the commission to determine the value of the property of the company used and useful in serving the public, the expenses prudently incurred in operating the company, and the cost of capital to the company during the company's next rate proceeding.

And, while we affirm and approve the revenue allocation presently in effect, for the reasons stated in Order Nos. 8160 and 8260, which reasons we hereby adopt, our action in this case will in no way preclude a reexamination of the company's rate structure in future proceedings.

In summary, we find that the rate schedules which were first authorized by Order No. 8160, and which were converted into interim rates by Order No. 8260, are just and reasonable. We further find that said rates do not produce a rate of return that is higher than that presently authorized by the commission, and that the company thus is entitled to keep those revenues which have been collected subject to the refund provision of Order No. 8260.

Accordingly, it is ordered that the rate schedules first authorized by Order No. 8160 continue in effect on a permanent basis.

It is further ordered that Florida Power Corporation is authorized to retain those revenues collected on an interim basis by virtue of the refund provision of Order No. 8260. It is further ordered that this docket be and the same is hereby closed.

Chairman MANN dissents.